❏ Original          ❏ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

CLERK'S OFFICE
A TRUE COPY
Mar 13, 2023
s/ Erin Hayes
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of )<br>*(Briefly describe the property to be searched* )<br>*or identify the person by name and address)* )<br>Information about the location of the cellular telephone )<br>assigned call number 281-210-7921 (the "Target Cell Phone"), )<br>whose service provider is T-Mobile, as further described in )<br>Attachment A )| Case No.   **23-m-324** |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before     3-27-23     *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to     Hon. Stephen C. Dries, U.S. Magistrate Judge     .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☑ for   30   days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:     3-13-23      11:05 am          *Stephen C. Dries*
                                                    *Judge's signature*

City and state:   Milwaukee, Wisconsin          Honorable Stephen C. Dries, U.S. Magistrate Judge
                                                    *Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1.      The cellular telephone assigned call number 281-210-7921 (the "Target Cell Phone"), and whose service provider is T-Mobile, a wireless telephone service provider headquartered at 625 132nd Ave SE, Bellevue, Washington.

2.      Information about the location of the Target Cell Phone that is within the possession, custody, or control of Sprint, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

1. All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days from the date the warrant is signed, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

2. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Sprint, Sprint is required to disclose the Location Information to the government. In addition, Sprint must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the Target Cell Phone on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

3. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).



CLERK'S OFFICE
A TRUE COPY
Mar 13, 2023
s/ Erin Hayes
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.   **23-m-324**
Information about the location of the cellular telephone assigned )
call number 281-210-7921 (the "Target Cell Phone"), whose )
service provider is T-Mobile, as further described in Attachment A )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1503 | Obstruction of justice. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI SA Jacob Dettmering
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: 3-13-23

_____
*Judge's signature*

City and state:  Milwaukee, Wisconsin

Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent Jacob Dettmering, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 281-210-7921 (the "Target Cell Phone"), whose listed subscriber is unknown, and whose user has been identified as RONNELL BOWMAN (DOB 01/07/1994), and whose service provider is T-Mobile, a wireless telephone service provider headquartered at 625 132nd Ave SE, Bellevue, Washington.  The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since January 7, 2018.  I was assigned to the FBI Capitol Area Gang Task Force (CAGTF) in Baton Rouge, Louisiana from June 15, 2018, to April 1, 2020.  Since April 1, 2020, I have been assigned as the Task Force Coordinator for the Milwaukee Area Safe Streets Task Force (MASSTF).  Since 2018, I have investigated violations of Federal law, directed drug and street gang investigations, obtained and executed search and arrest warrants related to the distribution of illegal narcotics, and debriefed confidential informants and cooperating defendants.  I am an investigator or law

enforcement officer of the United States within the meaning of 18 U.S.C. Section 2510(7), in that I am empowered by the law to conduct investigations of and to make arrests for federal felony arrests.

3.     This affidavit is based upon my personal knowledge and upon information reported to me by other federal and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

4.     This affidavit is intended to show only that there is sufficient probable cause for the requested search warrant and does not set forth all my knowledge about this matter.

**PROBABLE CAUSE,**

5.     Since February 2021, the Federal Bureau of Investigation (FBI), the Milwaukee Police Department (MPD), and other agencies have been investigating identified members of the Wild 100's, a violent street gang in Milwaukee, also known as the Shark Gang, and members of other violent rival gangs who have been feuding with the Wild 100s, including Wild 100s gang member Ronnell BOWMAN (DOB 01/07/1994). Case agents have been investigating Ronnell BOWMAN for violations of

2

18 U.S.C. § 922(g) (possession of a firearm by a felon), and 18 U.S.C. § 1958 (murder for hire).

6.      On September 30, 2020, MPD officers responded to a shooting at the funeral for GBC gang member, Braxton TAYLOR.  Seven victims suffered nonfatal gunshot wounds.  Witnesses advised that members of the Wild 100s were making social media posts around the time of the funeral that suggested they may be involved in the shooting. Later that day there were two other shootings, one at the TAYLOR memorial near 21st Street and Center Street, in which an unintended target suffered a gunshot wound to her head, and the other in which Wild 100s members, Quiman E. TOWNSEND (DOB 03/13/1991) and Ramon SAVAGE (DOB 06/13/1995) suffered nonfatal gunshot wounds.  Wild 100s members are suspects in the funeral home shooting and GBC members are suspects in the shooting at the Taylor memorial and shootings that wounded Townsend and Savage.  Since July of 2020, case agents have identified at least 25 separate incidents of firearms violence and illegal firearms possession linked to members of Wild 100s and the feud with the GBC gang.

7.      On March 15, 2021, MPD officers responded to the 7100 block of north 76th Street for a shooting.   Upon arrival, officers found Raymond COLON (DOB 05/17/2000), a Wild 100s member, deceased from apparent gunshot wounds in the driver's seat of a vehicle.  Returning to the vehicle was Teshae HANNA, another Wild 100s member, (DOB09/23/1999), after running to a nearby McDonalds and dumping a

3

Glock handgun that had been converted to a machine gun utilizing an affixed auto sear. HANNA suffered a graze wound to the head but survived.

8.      Shortly after the shooting, Keyon STEWART (DOB 08/25/1998), a known GBC affiliate, posted a video to his publicly viewable Instagram account ("_low40") in which he makes light of the homicide and shooting, telling the Wild 100 members to "Go pick Teshae and little Raymond up".   Immediately following this post, Ronnell BOWMAN, a high-ranking leader of the Wild 100's, posted to his publicly viewable Instagram account ("bigronnybow"), offering $50,000 to anyone who kills the mother or sister of STEWART.  Based upon case agents training, experience, and the investigation to date, case agents believe BOWMAN was referring to giving $50,000 to anyone who kills STEWART, his mother, or his sister.  A screenshot is set forth below.



9.      On April 5, 2021, N.B., a close friend of STEWART's, was murdered in the alley behind his residence.  One Wild 100s member, Ronnie Jackson, is charged with committing this homicide, however, multiple calibers of casings were recovered from the homicide scene, indicating multiple shooters were involved.  Case agents have debriefed confidential sources who have stated that the homicide of N.B. was committed by Wild 100 gang members and the reason they killed N.B., STEWART's close friend, was because they could not find STEWART to kill him.

10.      Case agents also interviewed a confidential source regarding the murder of BUFORD on April 5, 2021.  The confidential source (CS #1) stated that s/he went to Atlanta, GA to stay with family around April 1, 2021.  On April 5, 2021, CS #1 received an Instagram video call from BOWMAN in which BOWMAN told him that "they got him", referring to the murder of BUFORD.  CS #1 stated that s/he did not immediately believe this, but quickly realized it was true when s/he saw people going live on Instagram stating there was a homicide around 49th and Center Streets in Milwaukee.

11.      CS #1 stated that he believed RONNIE JACKSON would be the shooter in the homicide and CS #1 contacted JACKSON afterward to talk to him via phone call.  CS #1 stated that during this call, JACKSON told CS #1 that he participated in the homicide of BUFORD and also stated that LAWRENCE TURNER was also present and participated in the homicide of BUFORD.  Case agents reviewed Instagram search warrant returns for CS #1's account and confirmed that CS #1 called JACKSON at

5

approximately 10:47pm on April 5, 2021. This was approximately an hour after BUFORD was killed.

12. CS #1 stated that he had his mother, L.H., purchase a plane ticket for JACKSON to get him out of Milwaukee the day after the homicide. CS #1 stated that while JACKSON was in Atlanta, GA with him/her, JACKSON told CS #1 details of the homicide of BUFORD, including that JACKSON shot BUFORD first and then TURNER shot him numerous times. JACKSON stated that TURNER exited the vehicle, and shot BUFORD while he was on the ground to ensure that he was dead. This statement is consistent with the homicide scene as there were numerous .45 caliber shell casings surrounding the body, indicating that the rounds were fired from very close range.

13. CS #1 stated that BOWMAN paid JACKSON $10,000 to kill BUFORD as retaliation for the shooting of HANNA and death of COLON on March 15, 2021. CS #1 stated that initially, BOWMAN offered $50,000 to anyone who killed the mother or sister of KEYON STEWART, the person believed to be responsible for the homicide of COLON. Due to the lack of people that were able to get directly to STEWART, CS #1 stated that BOWMAN decided that BUFORD would be a good target because he was best friends with STEWART.

14. CS #1 stated that BOWMAN attempted to pay JACKSON for the homicide of BUFORD via CashApp but was unsuccessful. As a result, JACKSON had to fly to Houston, TX to get paid in cash from BOWMAN. JACKSON flew to Houston, got paid

6

from BOWMAN and returned to Atlanta, where he stayed with CS #1 for a few more days.

15.     For several reasons, case agents believe that CS #1 is reliable and credible. First, CS #1 has been providing continuous information since April of 2022.   Second, the information CS #1 has provided is substantially against CS #1's penal interest. Third, the information provided by CS #1 is consistent with evidence obtained elsewhere in this investigation where CS #1 was not utilized, and substantial portions of CS #1's information has been corroborated through independent investigation, including subpoenaed records and other sources. CS #1 is cooperating for consideration on federal firearms charges.   CS #1 has prior felony convictions for firearms offenses. Finally, CS #1 has had an adequate opportunity to directly observe the events discussed and/or has heard conversations directly from the individuals discussed herein.     For these reasons, case agents believe CS #1 to be reliable.

16.     Case agents subpoenaed flight records for JACKSON, which revealed that he flew from Milwaukee, WI to Atlanta, GA on April 7, 2021, but left Atlanta to go to Houston, TX on April 9, 2021.   On April 28, 2021, JACKSON returned to Atlanta, GA, until May 5, 2021, when he returned to Milwaukee, WI.

17.     Case agents also subpoenaed BOWMAN's CashApp account, which revealed that BOWMAN attempted to pay JACKSON via CashApp the day following the homicide of BUFORD. On April 6, 2021, BOWMAN attempted to send $3,000 to JACKSON, with the notation that the payment was for a "house."     BOWMAN

7

attempted another $3,000 transfer to JACKSON on April 7, 2021, with the notation that the payment was for "college," and again on April 9, 2021, BOWMAN attempted to send JACKSON $3,000 for a "new house." On April 10, 2021, BOWMAN was successful in sending JACKSON $1,000 via CashApp with the notation that it was for "food." A screenshot is set forth below showing BOWMAN's CashApp transactions for that week.

| Ref | Date | Time (UTC) | Payee | Amount | Memo | Successful |
|---|---|---|---|---|---|---|
| 1 | 4/6/2021 | 2:10:36 PM | Big Toon | $ 3,000.00 | rent | Yes |
| 2 | 4/6/2021 | 3:00:10 PM | Terrell Turner | $ 1,000.00 | | Yes |
| 3 | 4/6/2021 | 8:19:02 PM | Ronnie Jackson | $ 3,000.00 | house | No - above weekly limit |
| 4 | 4/7/2021 | 3:51:14 AM | Sharcara Bowman | $ 100.00 | | Yes |
| 5 | 4/7/2021 | 12:20:58 PM | Ronnie Jackson | $ 3,000.00 | college | No - above weekly limit |
| 6 | 4/7/2021 | 2:59:53 PM | Dewayne Ausbon | $ 50.00 | jojo | Yes |
| 7 | 4/8/2021 | 12:44:19 AM | Mari Walton | $ 20.00 | food | Yes |
| 8 | 4/8/2021 | 1:48:12 PM | Mari Walton | $ 100.00 | food | Yes |
| 9 | 4/9/2021 | 10:44:26 AM | TiffanyBowman | $ 1,000.00 | happy birthday | Yes |
| 10 | 4/9/2021 | 3:41:20 PM | Mari Walton | $ 100.00 | hot rod | Yes |
| 11 | 4/9/2021 | 9:53:36 PM | Ronnie Jackson | $ 3,000.00 | new house | No - above weekly limit |
| 12 | 4/10/2021 | 12:57:47 AM | Ronnie Jackson | $ 1,000.00 | food | Yes |
| 13 | 4/10/2021 | 4:44:38 PM | TiffanyBowman | $ 500.00 | food | No - above weekly limit |
| 14 | 4/10/2021 | 4:44:49 PM | TiffanyBowman | $ 500.00 | | No - above weekly limit |
| 15 | 4/10/2021 | 7:01:34 PM | Omar | $ 5.00 | | Yes |
| 16 | 4/11/2021 | 2:57:18 PM | Ronnie Jackson | $ 500.00 | food | No - above weekly limit |

18.    Case agents subpoenaed flight records for TURNER, which revealed that he travelled from Chicago, O'Hare Airport to Houston, Texas on April 6, 2021, via Spirit Airlines. It should be noted that per the flight records, the airline ticket was purchased by BOWMAN using a Visa card ending in x6727. TURNER returned to Chicago, O'Hare Airport on June 8, 2021, via Spirit Airlines. Once again, the flight was paid for by BOWMAN.

19.    While reviewing the CashApp return for BOWMAN, case agents also saw a payment to TURNER from BOWMAN the day following the Homicide for a total of $1,000. This is consistent with the payments allegedly made by BOWMAN for the

Homicide of BUFORD. The payment to TURNER can be seen in the chart referenced above, which also shows the payments for JACKSON.

20. The investigation into the Wild 100s street gang, including BOWMAN, for violations of federal law remains ongoing. As part of the investigation, a grand jury subpoena was served on Wild 100s member LAWRENCE TURNER, and case agents attempted to also serve a grand jury subpoena to his mother, KATHERINE PEET. On February 23, 2023, Attorney Mike Jacobs called your affiant and left a phone message stating that LARRY TURNER SR, LAWRENCE TURNER's father, called him and told him that "the word on the street is that if anybody helps your office or you, there is a $25,000 bounty on that person or that person's family." Attorney Jacobs then stated that KATHERINE PEET, LAWRENCE TURNER's mother, called him as well and stated the same thing to him.

21. On March 3, 2023, LARRY TURNER SR was interviewed at the FBI Office, and he stated that he was speaking with his son, LAWRENCE TURNER JR. (herein referred to as TERRELL), about his mother, KATHERINE PEET. TURNER stated that his son also goes by TERRELL, which was his middle name. TERRELL told TURNER that TERRELL and "his guys," including specifically BOWMAN, made an agreement that anyone who talks with the FBI or cooperates in the investigation into the Wild 100s will have a $25,000 bounty on their head. According to TERRELL, the money was already paid to someone who would carry out the killing or injuring of individuals who cooperate or the cooperator's families.

9

22.     On March 9, 2023, your affiant received a text message from a confidential source (CS #2) at 4:30 p.m., which read "You are being followed right now J you are at the court house right now please call me I have Ronnie bow and tray tray on the phone right now be safe call me ASAP."

23.     Your affiant called back CS #2 at 4:32 p.m. and s/he explained that RONNELL BOWMAN has "people" watching me and that I need to be careful. The CS #2 further stated that they were on me right then and that they knew I was at the courthouse and wearing a gray suit. At this time, I asked the CHS what else was said and he /she stated they knew I was there to meet with "Peter." Based upon this information, your affiant returned conducted a debrief of CS #2. CS #2 stated that during the morning on March 9, 2023, CS #2 was in a car with "Tray Tray" (case agents are aware "Tray Tray" is Terrecho SHURN Jr) and they placed a facetime call with RONNELL BOWMAN via his phone number 281-210-7921 (Target Cell Phone). SHURN had a phone number of 414-554-9992. They talked on facetime for a while about nothing in particular. Later in the day, SHURN and BOWMAN called CS #2 and BOWMAN stated, "I know where Jake at right now." BOWMAN further stated that "Jake is behind my cousin and was downtown walking into the courthouse to meet with Peter." BOWMAN continued to say that he had someone following him (SA Dettmering) right now, and "my cousin has him on facetime too." Case agents reviewed phone records for CS #2's phone number, which corroborated CS #2's statements regarding calls with SHURN and BOWMAN.

10

24.     For several reasons, case agents believe that CS #2 is reliable and credible. First, CS #2 has been providing continuous information since March of 2021.   Second, the information CS #2 has provided is substantially against CS #2's penal interest. Third, the information provided by CS #2 is consistent with evidence obtained elsewhere in this investigation where CS #2 was not utilized, and substantial portions of CS #2's information has been corroborated through independent investigation, including subpoenaed records and other sources. CS #2 is cooperating for potential consideration on pending state charges.   CS #2 has prior felony convictions for delivery of heroin, possession with intent to distribute cocaine, and false imprisonment.  Finally, CS #2 has had an adequate opportunity to directly observe the events discussed and/or has heard conversations directly from the individuals discussed herein.     For these reasons, case agents believe CS #2 to be reliable.

25.     Based upon the facts in this affidavit, there is probable cause to believe that Ronnell BOWMAN is engaging in obstruction of justice, in violation of Title 18, United States Code, Section 1503 and is utilizing the telephone number 281-210-7921 (Target Cell Phone) to further this crime.  I further submit that probable cause exists to believe that obtaining the location information of 281-210-7921 (Target Cell Phone) will assist case agents in determining BOWMAN's co-conspirators, intended victims/witnesses, and evidence supporting his attempts to obstruct justice.

26.     In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public.  I also know that providers

of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

27.     Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile's network or with such other reference points as may be reasonably available.

28.     Based on my training and experience, I know that T-Mobile can collect cell-site data about the Target Cell Phone.

## AUTHORIZATION REQUEST

29.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

30.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

31.     I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile for a time period of 45 days from the date the warrant is

signed. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

32. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

14

## ATTACHMENT A

### Property to Be Searched

1.      The cellular telephone assigned call number 281-210-7921 (the "Target Cell Phone"), and whose service provider is T-Mobile, a wireless telephone service provider headquartered at 625 132nd Ave SE, Bellevue, Washington.

2.      Information about the location of the Target Cell Phone that is within the possession, custody, or control of Sprint, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

# ATTACHMENT B

## Particular Things to be Seized

1.     All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days from the date the warrant is signed, during all times of day and night.  "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

2.     To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Sprint, Sprint is required to disclose the Location Information to the government.  In addition, Sprint must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the Target Cell Phone on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

3.     This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).